**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-23669-BLOOM/Elfenbein**

KERSHA LEANIE LAMPSON HODGSON,

     Plaintiff,

vs.

STARBOARD CRUISE SERVICES, INC.,
CELEBRITY CRUISE LINE, INC.,
INTERNATIONAL CRUISE SHOPS, LTD.,
and CELEBRITY SILHOUETTE, INC.,

     Defendants.

_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendants Starboard Cruise Services, Inc.

("Starboard"), and International Cruise Shops, LTD's ("ICS") Motion to Dismiss Plaintiff's

Complaint, ECF No. [13], and Celebrity Cruise Line, Inc. ("Celebrity") and Celebrity Silhouette,

Inc.'s ("Silhouette") Motion to Dismiss the Plaintiff's Complaint, ECF No. [21]. Plaintiff Kersha

Leanie Lampson Hodgson ("Plaintiff") filed Responses in Opposition to both Motions to Dismiss.

ECF Nos. [16]; [21]. Starboard and ICS, and Celebrity and Silhouette (collectively "Defendants"),

filed their Replies in Support. ECF Nos. [22]; [25]. The Court has reviewed the Defendants'

respective Motions to Dismiss, the briefs in support and opposition, the record, and is otherwise

advised of the premises. For the reasons that follow, Defendants' Motions are granted.

I.      **FACTUAL BACKGROUND**

This case arises from a maritime employment-related injury Plaintiff suffered on board the

cruise ship M/V *Celebrity Silhouette*. The Complaint alleges that on August 6, 2022, Plaintiff was

hired by ICS to work as a Sales Associate on Celebrity's cruise ship M/V *Celebrity Silhouette*.

ECF No. [1] ¶ 8. Once on board, Plaintiff came under the direction and control of Starboard and/or Celebrity. *Id.* ¶ 9. ICS was her Jones Act employer and, thus, owed her the duties and benefits of a maritime employer, including "the duties to provide a seaworthy vessel, to provide prompt, proper and adequate medical care, and to provide maintenance and cure until [she] was at maximum medical cure." *Id.* ¶ 12. Because Starboard and Celebrity directly controlled her work, they were her *borrowing* Jones Act employers and therefore also owed her the duties of a maritime employer. *Id.* ¶¶ 10–11. Silhouette was the owner and operator and/or bare boat charterer and/or owner *pro hac vice* of the cruise ship, M/V *Celebrity Silhouette*. *Id.* ¶ 16. Similarly, Celebrity was the owner and/or bare boat charterer and/or owner *pro hac vice* of the cruise ship, M/V *Celebrity Silhouette*. Regarding the relationship between the Defendants, Starboard, Celebrity, and ICS engaged in a joint venture to sell merchandise to Celebrity's passengers. *Id.* ¶ 23.

Although ICS was Plaintiff's nominal employer, once she joined the M/V *Celebrity Silhouette*, it was agreed that Plaintiff was working for Starboard under a Starboard supervisor and assisting Starboard in selling goods in its on-board shops. *Id.* ¶ 31. Plaintiff's Starboard supervisor reported directly to and was under the supervision of Celebrity's Hotel Director; thus, all final orders came from Celebrity. *Id.* ¶ 41. Plaintiff provided her "sales services" for the benefit of Starboard on a vessel owned and operated by Celebrity, and her "equipment, clothing, shoes, supplies, and food" were provided by either Starboard or Celebrity. *Id.* ¶ 33.[1] One hundred percent of Plaintiff's work was controlled, supervised, and directed by a Starboard supervisor, who in turn was under the supervision of Celebrity, not ICS.[2]   *Id.* ¶ 34. Starboard or Celebrity also paid

---

[1] While Plaintiff was originally hired to "work as a seaman and crewmember for ICS, . . . she never performed any seaman's work directly under ICS [a]nd never performed any functions on the vessel as a crewmember, other than her work as a Sales Associate" for Starboard. *Id.* ¶ 34.

[2] Alternatively, Plaintiff alleges that "one hundred percent of Plaintiff's work on the M/V [Celebrity Silhouette] was under the control supervision and direction of [Celebrity]." *Id.* ¶ 46.

Plaintiff's salary, maintained the right to terminate her employment, "directed Plaintiff's medical treatment, made all decisions regarding when and where Plaintiff would sign off, provided for her repatriation, and provided her medical care off the vessel." *Id.* ¶¶ 34–37.

In her capacity as a Sales Associate, Plaintiff was required to exert herself physically, as she was constantly required to bend and lift heavy items, and stand for long periods of time. *Id.* ¶ 53. The vessel was short-staffed and Plaintiff was required to do the job of two crewmembers. *Id.* ¶ 55. Defendants were aware or should have been aware that these were dangerous conditions, particularly given that Defendants assigned her these duties "without proper equipment such as a trolley, or other assistance or rest[.]" *Id.* ¶¶ 72–73, 86–87.

Prior to her employment, Plaintiff underwent a pre-employment medical evaluation and was found fit for duty with no restrictions, illnesses, or injuries, and no limitations. *Id.* ¶ 54.  On September 11, 2022, Plaintiff was ordered to lift and carry numerous heavy boxes on a repetitive basis. When Plaintiff began lifting one of the last boxes, she felt a sharp pain in her lower back and began to experience menstrual bleeding and abdominal pain. *Id.* ¶ 55. Consequently, Plaintiff went to the ship's infirmary[3] complaining of "lower back pain" and "abdominal pain." *Id* ¶ 57. After examining Plaintiff, the on-board physician diagnosed Plaintiff with endometriosis and dysmenorrhea, but "ignored [her] complaints of lower back pain." *Id.* The next day, Plaintiff returned to the infirmary "with reduced but persistent pain" and was "sent back to work on full duty." *Id.* ¶ 58.

On November 9, 2022, Plaintiff returned to the infirmary "with complaints of continued lower abdominal pain that was not improving with the use of Tylenol or Tramadol." *Id.* ¶ 59. The physician once again diagnosed Plaintiff with dysmenorrhea and declared her unfit for duty. *Id.*

---

[3] The "infirmary was owned, operated, controlled, supervised, and maintained" by Celebrity. *Id.* ¶ 56.

Plaintiff returned to the infirmary on November 10, 2022, and was assessed with dysmenorrhea and sent back to work on full duty. *Id.* ¶ 60. Over the next weeks, Plaintiff was treated for her continued menstrual pain and was diagnosed with endometriosis. *Id.* ¶ 61. Plaintiff was medically disembarked and sent back to her home country of Nicaragua. *Id.* ¶¶ 61–62.

Once Plaintiff returned home, she was examined by a physician who diagnosed her with "grade 4 endometriosis." *Id.* ¶¶ 62–65. Her physician also noted that she was not at maximum medical improvement ("MMI") and recommended a complete hysterectomy—a procedure which the Plaintiff did not want to undergo. *Id.* ¶¶ 65–66. Although there were less invasive treatments available, Defendant refused to offer any procedure other than a hysterectomy. *Id.* ¶ 66. Notwithstanding her treatment, Plaintiff has not been found at MMI for her lumbar, endometriosis, or cyst conditions. *Id.* ¶ 67.

The Complaint asserts the following claims against Defendants: Jones Act Negligence against Starboard (Count I); Jones Act Negligence against Celebrity (Count II); Jones Act Negligence against ICS (Count III); Unseaworthiness against Celebrity (Count IV); Unseaworthiness against Celebrity Silhouette (Count V); Maintenance and Cure Claim against Starboard (Count VI); Maintenance and Cure Claim against Celebrity (Count VII); Maintenance and Cure Claim against ICS (Count VIII); Maintenance and Cure Claim against Celebrity Silhouette (Count IX); Failure to Provide Prompt, Proper, and Adequate Medical Care against Starboard (Count X); Failure to Provide Prompt, Proper, and Adequate Medical Care against Celebrity (Count XI); and Failure to Provide Prompt, Proper, and Adequate Medical Care against ICS (Count XII). *See generally id.* Plaintiff also seeks punitive damages for her Maintenance and Cure claims. *Id.* at 39.

Defendants Starboard and ICS, and Celebrity and Silhouette, now seek to dismiss the claims against them, via their respective Motions to Dismiss, because (1) Plaintiff's Employment Agreement provides that Maltese law governs and, therefore, Plaintiff cannot bring causes of action under United States law; (2) the Complaint constitutes an impermissible shotgun pleading; and (3) Plaintiff fails to allege sufficient facts to determine who her employer is under the Jones Act. *See generally* ECF Nos. [13]; [21]. As for Counts I through III, Defendants contend that those claims must be dismissed because Plaintiff fails to properly establish the notice necessary to sustain a Jones Act negligence claim. *See* ECF Nos. [13] at 14–16; [21] at 14–15. Defendants assert that Plaintiff's request for punitive damages must be stricken because the demand lacks adequate factual support. *See* ECF Nos. [13] at 17–18; [21] at 17–18. Finally, Defendants Celebrity and Silhouette seek to dismiss the Complaint due to insufficient service of process, arguing that service of process was rejected by CT Corporation System ("CT Corporation"). ECF No. [21] at 18.

Plaintiff responds that the choice of law provision of the Employment Agreement is not enforceable and that the Complaint does not violate the prohibition against shotgun pleadings. *See* ECF Nos. [16] at 5–9, 15–16; [24] at 5–14. Regarding her employer allegations, Plaintiff contends that she has provided more than sufficient facts to establish that either Starboard, Celebrity, or ICS was her employer, and at the pleadings stage, she need not allege only one Jones Act employer but may plead in the alternative. *See* ECF Nos. [16] at 16; [24] at 14. Plaintiff further argues that she has established notice, as the Complaint properly identifies a dangerous condition and there are specific details about how Defendants' acts made them actually or constructively aware of the dangerous condition. ECF Nos. [16] at 17–18; [24] at 14–16. Plaintiff maintains that she has sufficiently alleged a basis for punitive damages because there is no need to establish "intentional

harm." ECF Nos. [16] at 19–20; [24] at 16–17. Therefore, the "repeated recommendations for medical care, maintenance and cure" and Defendants' repeated refusals to provide them without any good faith basis are sufficient to support punitive damages. ECF No. [24] at 16. Regarding Celebrity and Silhouette's insufficient services of process argument, Plaintiff contends that Silhouette has not met its burden of proof to show defective service of process, relying on a purported letter claiming that CT Corporation is not its registered agent. ECF No. [24] at 18–19.

## II.     LEGAL STANDARD

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim

upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted). In considering a motion to dismiss, the court is generally limited to the facts contained in the complaint and attached exhibits. *See Thaeter*, 449 F.3d at 1352. However, pursuant to the incorporation by reference doctrine, "a district court may consider evidence attached to a motion to dismiss without converting the motion into a motion for summary judgment 'if the document is (1) central to the plaintiff's claim; and (2) undisputed, meaning that its authenticity is not challenged.'" *Swinford v. Santos*, 121 F. 4th 179, 187 (11th Cir. 2024) (quoting *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024)).

## III.    DISCUSSION

### A. Shotgun Pleading

Defendants argue that the Complaint should be dismissed as it constitutes an impermissible shotgun pleading. ECF Nos. [13] at 7; [21] at 7. Turning first to Counts I–III, Defendants assert that those claims violate the third type of shotgun pleading—"a complaint that does not separate 'each cause of action or claim for relief' into a different count." ECF Nos. [13] at 8; [21] at 8 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)).

According to Defendants, Counts I–III comingle various theories of negligence, as all three counts allege that Defendants owed the same duties to Plaintiff to provide her with a reasonably safe working environment, including the provision of prompt, proper, and adequate medical treatment aboard the vessel and shoreside, and then proceed to list the same identical thirty (30) ways in which each Defendant breached this duty. ECF Nos. [13] at 8; [21] at 8 (quoting ECF No. [1] at ¶¶ 71(a)-(cc), 77(a)-(cc), 85(a)-(cc)). Not only do Defendants contend that Counts I–III comingle multiple causes of action, they also argue that they "contain overlapping allegations and improperly lump the same exhaustive list of breaches against all Defendants." ECF Nos. [13] at 10; [21] at 10. Accordingly, Defendants insist that the counts do not give Defendants fair notice of the theories of liability each must defend or the specific factual allegations that support each cause of action. *Id.*

Plaintiff responds that her Complaint does not constitute a shotgun pleading because she alleges "in great detail the dangers and conditions which caused her injury and nature of her accident and the ensuing failures for her to receive prompt medical care, maintenance & cure thereafter." ECF Nos. [16] at 15; [24] at 13 (emphasis removed). While Plaintiff acknowledges that she has asserted similar claims against all three Defendants, she argues that such pleadings are permissible as Federal Rule of Civil Procedure 8(a)(3) allows for alternative pleadings. However, Plaintiff does not address Defendants' argument that she has improperly commingled her negligence claims.

"A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading [violates Rule 8(a)(2) and] constitutes a 'shotgun pleading.'" *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x. 274, 277 (11th Cir. 2008) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128–29 (11th Cir. 2001)). Such unclear pleadings "exact an intolerable

toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (quoting *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997)). The negative externalities also extend beyond a single case. "[J]ustice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard." *Id.* Accordingly, shotgun pleadings are condemned by the Eleventh Circuit, which has specifically instructed district courts to dismiss shotgun pleadings as "fatally defective." *B.L.E. v. Georgia*, 335 F. App'x. 962, 963 (11th Cir. 2009) (citations omitted).

The Eleventh Circuit has identified four types of shotgun pleadings, the "unifying characteristic" of which being that all shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The first and "most common type" of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. The second type of shotgun pleading is the complaint that is "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third is the pleading "that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1323. Fourth is the pleading that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

The Court finds that Counts I–III of the Complaint commit the third type of sin identified by the Eleventh Circuit in *Weiland*—failing to separate "into a different count each cause of action

9

or claim for relief." 792 F.3d at 1323; *see Gautam v. City of Sunrise*, No. 25-CV-60841, 2025 WL 2418392, at *10 (S.D. Fla. Aug. 21, 2025). For instance, in Count I, Plaintiff alleges that Starboard was negligent based on (1) its failure "to provide Plaintiff with a reasonably safe working environment," (2) its failure "to instruct and/or train its crewmembers to perform tasks with a procedure, method, or policy that would avoid injuries," and (3) its "[failure] to implement safe and reasonable work methods. Those allegations constitute three distinct forms of negligence, specifically, failure to provide, failure to implement, and failure to train. Courts in this district have been clear that distinct theories of negligence must be pled in separate counts as opposed to pleading all the various theories of liability under one general negligence claim. *See e.g.*, *Miles v. Carnival Corp.*, 767 F. Supp. 3d 1368, 1373 (S.D. Fla. 2025) ("Plaintiffs may not 'cram multiple, distinct theories of liability into one claim'") (quoting *Ortiz v. Carnival Corp.*, No. 20-cv-24838, 2020 WL 6945958, at *1 (S.D. Fla. Nov. 25, 2020)); *White v. Carnival Corp.*, No. 25-CV-20925, 2025 WL 1865127, at *3 (S.D. Fla. July 7, 2025) ("When a plaintiff asserts distinct theories of negligence liability in a maritime case, the courts in this district have been clear that the plaintiff must bring each as a separate count."); *Ortiz*, 2020 WL 6945958, at *1 (ordering plaintiff to amend complaint to "separately allege an independent count" for various theories of liability that were lumped into a single claim (citing *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-Civ, 2012 WL 2049431, at *5–*6, n.2 (S.D. Fla. June 5, 2012))); *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL 8227674, *3 n.3 (S.D. Fla. Dec. 7, 2015) (same); *Lanza v. Hobby Lobby Stores, Inc.*, No. 24-cv-24043, 2025 WL 507308, at *3 (S.D. Fla. Feb. 14, 2025) ("Because Plaintiff seeks to advance multiple theories of negligence, she must separate each cause of action into a separate paragraph, and [she must] support each cause of action with specific (non-conclusory) factual allegations." (internal quotations and citation omitted)); *Doe By v. Hernando*

10

*Cnty. Sch. Dist.*, No. 8:23-CV-1772-CEH-AAS, 2023 WL 5758934, at *2 (M.D. Fla. Sept. 6, 2023) ("To avoid improper commingling, claims that Plaintiffs assert under distinct theories of liability must be set forth in different counts."). Because Counts II–III have the same defects, the Complaint is dismissed without prejudice and with leave to amend to permit Plaintiff to cure the pleading deficiencies.

### B.   Insufficient Service of Process

In their Motion to Dismiss, Defendants Celebrity and Silhouette contend that Plaintiff provided insufficient service of process. ECF No. [21] at 18. Plaintiff attempted to serve both Defendants by providing copies of the Complaint and summons to CT Corporation, which returned letters denying service of process. *Id.* at 18–19. Regarding Celebrity, CT Corporation denied service because it is the registered agent for "Celebrity Cruises, Inc.", not "Celebrity Cruise Line, Inc." *Id.* at 19. Regarding Silhouette, it rejected service of process as CT Corporation is not its registered agent. *Id.* Attached to Defendants Celebrity and Silhouette's Motion to Dismiss are the letters denying service of process. ECF Nos. [21-1]; [21-2]. Furthermore, Defendants' Certificate of Interested Parties clarifies that "[t]he vessel, *Celebrity Silhouette*, is 100% owned by RCL Celebrity Ships LLC (who Plaintiff erroneously labels 'Celebrity Silhouette Inc.'), which is an indirect, wholly owned subsidiary of Royal Caribbean Cruises Ltd." ECF No. [32] at 2.

Plaintiff responds that Silhouette has failed to meet its burden of proof regarding deficient service of process.[4] ECF No. [24] at 18. Plaintiff points out that she served process upon Silhouette in a concurrent state action via CT Corporation. *Id.* In that state action, Plaintiff highlights that

---

[4] While Plaintiff responds to Silhouette's service of process arguments, Plaintiff does not respond to the argument *Celebrity* presents in their Motion regarding insufficient service of process, and thus the Court deems the argument unrebutted.

Silhouette did not object to service of process and later appeared in the state action, despite moving to dismiss on a different basis. *Id.* Moreover, Plaintiff contends that Silhouette did not attack any defect in the return of service, relying instead on a letter stating that CT Corporation System is not its registered agent. *Id.* Plaintiff argues that Silhouette "has not overcome the presumption of regular service" as the letter is not sufficient to do so, and seeks to bolster her argument by claiming that Silhouette had "actual knowledge" of the litigation and has been "actively participating" in it. *Id.* at 19. Plaintiff also argues that since "[Silhouette] purports to be a foreign corporation," valid service may be accomplished pursuant to the rules for foreign entities, namely Fed. R. Civ. P. 4(f)(3) and 4(h)(2). *Id.*[5]

Under the Federal Rules of Civil Procedure, "[u]nless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation [being served in a judicial district of the United States] . . ., must be served: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1). An individual may be served within a U.S. judicial district by "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following . . . (C) delivering a copy of each to an agent authorized by appointment or law to receive such service of process." Fed. R. Civ. P. 4(e). Under the Florida statute, "a domestic corporation or registered foreign corporation may be served

---

[5] Plaintiff, in her Complaint, alleges that Silhouette is a foreign corporation with its principal place of business in Miami, Florida. ECF No. [1] ¶ 7.

with process required or authorized by law by service on its registered agent designated by the corporation under chapter 607 or chapter 617, as applicable." Fla. Stat. § 48.081(2).

"While a plaintiff bears the ultimate burden of proving valid service of process, a 'return of service that is regular on its face is presumed to be valid absent clear and convincing evidence presented to the contrary.'" *Friedman v. Schiano*, 777 F. App'x 324, 331 (11th Cir. 2019) (quoting *Robles-Martinez v. Diaz, Reus & Targ, LLP*, 88 So. 3d 177, 179 (Fla. 3d DCA 2011)). "Regular on its face means the return of service attests to all the information required by the service statute." *Id.* Further, "clear and convincing evidence 'must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.'" *Id.* (quoting *Slomowitz v. Walker*, 429 So. 2d 797, 800 (Fla. 4th DCA 1983).

It is not uncommon for judges to resolve factual disputes where the motion to dismiss is not an adjudication on the merits. *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). "A judge may make factual findings necessary to resolve motions to dismiss for lack of personal jurisdiction, improper venue, and ineffective service of process." *Id.* (citing Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1360 at 78 n.15 (3d ed. 2004) (stating that "the defense of improper service of process involves a matter in abatement and does not go to the merits of the action" and that any "factual question raised by the affidavits or other evidence presented on a Rule 12(b)(4) or a Rule 12(b)(5) motion should be determined by the district court.").

In the present case, Plaintiff submitted a Notice of Compliance—Return of Service. ECF No. [11]. The Return of Service forms for "Celebrity Cruise Line, Inc." and "Celebrity Silhouette" are included. ECF Nos. [11-2]; [11-4]. Regarding Silhouette, Defendants' Certificate of Interested Parties clarifies that M/V *Celebrity Silhouette* is wholly owned by RCL Celebrity Ships LLC. *See*

ECF No. [32] at 2. Moreover, Defendant Silhouette attaches a "notice of rejected service of process" letter from CT Corporation informing Plaintiff that it is "not the registered agent of the party [Plaintiff] [was] attempting to serve." ECF No. [21-1]. Those documents demonstrate that neither Celebrity nor Silhouette were properly served under their correct name.

The Eleventh Circuit has held "when a plaintiff has actually sued and served the correct party, but merely mistakenly used the wrong defendant's name, a mere misnomer exists and it may be disregarded where it is fairly certain that no prejudice has resulted to the defendant." *Transcontinental Insurance Co. v. L.F. Staffing Services, Inc.*, No. 07-80865-CIV, 2008 WL 11333664 (S.D. Fla. 2008) (citing *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 874 (4th Cir. 1947); *People of the Living God v. Star Towing Co.*, 289 F. Supp. 635, 641 (E.D. La. 1968)). Here, however, that is not the case, and this Court firmly rejects the conclusion that, with regard to Defendant Silhouette, the difference between "Celebrity Silhouette" and "RCL Celebrity Ships LLC" is a "mere misnomer." Further, despite Plaintiff's argument to the contrary, courts in this District have relied on extrinsic evidence, including letters of notice rejecting service of process, at the motion to dismiss stage. *See Vazquez v. Graco, Inc.*, No. 23-20703-CV, 2023 WL 11988787, at *1 (S.D. Fla. 2023).

Accordingly, the Court is persuaded by the discrepancies between the Defendants' correct names and the incorrect names evidenced on the Plaintiff's Returns of Service. *See* ECF Nos. [32]; [11-2]; [11-4]. Those discrepancies find further support in Defendants' notice of rejected service of process letter, ECF No. [21-1]. Thus, Plaintiff has not met the requirements for sufficient service of process under the Federal Rules of Civil Procedure, nor the Florida Statutes. *See* Fed. R. Civ. P. 4(h)(1); Fed. R. Civ. P. 4(e); Fla. Stat. § 48.081(2).

Plaintiff further argues that the letter is a hearsay document and thus is not competent evidence by which Silhouette can refute a return of service; however, Plaintiff fails to offer any legal or factual support for this proposition. Accordingly, "[w]hen a litigant raises an argument only generally and fails to offer specific factual contentions or fails to support the argument with legal authority, a court may summarily reject the argument." *Cortaza v. Kijakazi*, No. 20-CV-23705, 2023 WL 2165149, at *4 (S.D. Fla. 2023); *see, e.g. Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 (11th Cir. 2016); *United States Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 (11th Cir. 2007). Plaintiff similarly argues that Defendant did "not provide any evidence that CT Corporation did not have sufficient agency relationship with Silhouette." ECF No. [24] at 20. However, that contention is also devoid of any factual or legal support. Thus, the Court finds service of process insufficient. Should Plaintiff seek to amend her Complaint, she must serve each improperly served Defendant pursuant to Federal Rule of Civil Procedure 4.

IV.   **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendants' Motion to Dismiss, **ECF No. [13]**, is **GRANTED.**

2.   Celebrity Cruise Line, Inc. and Celebrity Silhouette, Inc.'s Motion to Dismiss the Plaintiff's Complaint, **ECF No. [21],** is **GRANTED.**

3.   Plaintiff may file an Amended Complaint **no later than April 14, 2026**. Moreover, if Plaintiff refers to her "Employment Agreement" and "employment contract" in her Amended Complaint, Plaintiff shall attach it to the Amended Complaint.

Case No. 25-cv-23669-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 31, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

16